IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| HILDA L. SOLIS, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>      Plaintiff,<br><br>v.<br><br>R.M. INTERNATIONAL, INC., and JAMES KEYES,<br><br>      Defendants. | 3:09-CV-863-BR<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

KATHY ALEJANDRO
Acting Regional Solicitor
**BRUCE L. BROWN**
Associate Regional Solicitor
**EVAN H. NORDBY**
United States Department of Labor
Office of the Solicitor
300 Fifth Avenue, Suite 1120
Seattle, WA  98104
(206) 757-6762

      Attorneys for Plaintiff

1  - FINDINGS OF FACT AND CONCLUSIONS OF LAW

**RICHARD N. VAN CLEAVE**
VanCleave & Cobrain LLC
16135 S.W. Railroad Street
Sherwood, OR 97140
(503) 625-2100

**TODD A. HACKETT**
Stoel Rives LLP
900 S.W. Fifth Avenue, Suite 2600
Portland, OR 97204
(503) 294-9454

          Attorneys for Defendants

**BROWN, Judge.**

This action concerns the parties' dispute over the application of an exemption to the Fair Labor Standards Act of 1938 known as the Motor Carrier Act Exemption under 29 U.S.C. § 213(b)(1). The matter was tried to the Court on November 14 and 16, 2011.

The Court has weighed, evaluated, and considered the evidence presented at trial and makes Findings of Fact and Conclusions of Law herein pursuant to Federal Rule of Civil Procedure 52(a).

## BACKGROUND

Plaintiff Secretary of Labor alleges Defendants R.M. International, Inc. (RMI) and James Keyes violated the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, (FLSA) by failing to pay overtime compensation due their

2 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

employees. Plaintiff is seeking back wages and liquidated damages equal to the unpaid overtime violations under § 16(c) of FLSA, or in the event that liquidated damages are not awarded, pre-judgment interest computed on the unpaid wages due and, pursuant to § 17 of FLSA, the entry of a Judgment restraining the Defendants from withholding payment of unpaid minimum wages and overtime compensation due to Defendants' employees.

Defendants assert their drivers are exempt from the FLSA by virtue of an exemption under the Motor Carrier Act ("MCA"), 41 U.S.C. § 31502, *et seq.*, for which Defendants bear the burden of proof as to each of their drivers.

The parties agreed to try the matter to the Court. In the course of the two-day bench trial, there were ten witnesses: Gary Alan Zeek, Thomas W. Hammond, Danny Threadgill, Denora Lee Harnden, Michael C. Ryan, Danny Adams, Richard Reese, Raymond L. Montee, Emerson Lyle Tiedemann and Daniel Clarence Heath. The parties also presented the Deposition testimony of Alan Pearson, Chief Engineer of DTNA's engine-testing program. The Court weighed and evaluated their testimony and all of the exhibits received in the case in the same manner it would instruct a jury to do.

## FINDINGS OF FACT

Pursuant to Federal Rule of Civil Procedure 52(a), the Court

3 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

finds the following facts by a preponderance of the evidence:

**A.   Stipulated Facts.**

1. Defendant RMI was, at all times relevant to this action, a corporation with a facility in Portland, Oregon.

2. Defendant James Keyes was, at all times relevant to this action, President and owner of RMI.

3. During the period relevant to this lawsuit Defendants operated a transportation and truck testing business based in Oregon. Their sole client was Daimler Trucks North America ("DTNA") and its subsidiaries, Freightliner Trucks, Western Star Trucks, and Detroit Diesel Corporation.

4. The majority of Defendants' business was test driving trucks for Freightliner, Western Star, and Detroit Diesel as part of DTNA's Reliability Growth program. All Detroit Diesel engines are built in Michigan. RMI also tests motors manufactured by Cummins, Inc. Cummins engines are manufactured in Indiana.

5. Defendants' records show that 56% of their drivers never worked outside of Oregon. At least 72% of all of the drivers' total work days during the relevant period were spent driving solely within the State of Oregon.

6. Defendants' drivers drove trucks outside the State of

       Oregon for a variety of reasons including: delivery of trucks to another state, transporting trucks for maintenance purposes, and test driving the trucks under differing driving conditions.

7. When Defendants' drivers traveled out-of-state for the sole purpose of collecting test data, the trucks did not carry any goods or materials for delivery.

8. Drivers operating on routes solely within the State of Oregon did not carry any goods or materials for delivery.

9. Drivers sometimes worked in excess of 40 hours in a workweek, and when they did so Defendants did not pay overtime rates for hours worked in excess of 40 hours.

10. Defendants' drivers were required to pass DOT-mandated drug tests, driving tests, and physicals and were required to maintain DOT-mandated driving logs.

11. On or about November 29, 2009, the Department of Transportation performed a compliance review of DTNA and RMI.

12. The parties filed a Stipulation (#95) as to Damages that sets out the possible damage awards based on back pay potentially owed to dozens of drivers if the Court finds in favor of Plaintiff.

5 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

B. **Facts Established at Trial:**

1. The engines Defendants tested for DTNA and its subsidiaries as a part of the Reliability Growth program were shipped to Portland, Oregon, where they would be installed in an empty truck chasis (referred to as "gliders"). After the testing was complete, a tested engine was removed from that chasis. Several drivers saw engines not installed in truck bodies and truck bodies without engines at the RMI facility. Almost all engines tested by Defendants are returned to their out-of-state manufacturer after testing is completed. Defendants dissembled very few engines in Portland and only to assess engine failures or for training purposes.

2. The length of road testing for any engine varied from 50,000 to 800,000 miles per engine.

3. Defendants' trucks in the testing program were commonly fitted with "data loggers" that recorded and stored information about the engine's performance during the test drives. Defendants treated the data from test drives as proprietary information and protected the data as trade secrets in many of its employment agreements with its drivers.

4. DTNA engineers work onsite at the RMI facility. DTNA

6 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

engineers occasionally rode with drivers on their test-drives. When the trucks returned to the RMI facility, DTNA engineers downloaded the information from the data loggers to laptop computers for analysis, and the data was also made a part of a database that is available to out-of-state engineers. In addition, Defendants' drivers made handwritten records known as "RG Sheets" in which they noted any problems with or relevant observations of their trucks during test drives.

5. DTNA engineers made adjustments to the trucks and engines based on the data produced during test drives or on the basis of driver observations. DTNA engineers could require maintenance or repair by mechanics at the RMI facility.

6. DTNA engineers (Portland, Oregon), Detroit Diesel engineers (Michigan), and Daimler engineers (Stuttgart, Germany) relied on the data provided by the test program in the design, production, and manufacturing of the engines being tested by Defendants.

7. Defendants' drivers typically drove routes within Oregon of 400 to 500 miles per shift, which was roughly 11 hours.

8. On occasion, Defendants randomly assigned drivers to drive trucks without trailers (a "bobtail")

7 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

    approximately 20 miles to Ridgefield, Washington for testing on a "dynamometer," for maintenance, or to obtain biofeul. Drivers testified at trial these trips were assigned approximately one to four times per year.

9. Other than occasional trips to Ridgefield, Washington, almost all routes outside the State of Oregon were accepted on a volunteer basis. Although Michael C. Ryan was assigned a single test route in Washington for one two-to-three-week period, the evidence otherwise reflects Defendants did not force drivers to take interstate routes and did not punish any driver who did not volunteer for such routes.

10. Although the testing program with DTNA and its subsidiaries constituted the majority of Defendants' work, Defendants also transported engines and parts between Portland and Detroit, delivered trucks to customers across the country, and performed "break in" tests by road-testing new trucks for 5,000 miles for customers who had purchased them.

## CONCLUSIONS OF LAW

Based on the foregoing Findings of Fact and the legal standards that follow, the Court makes the following Conclusions of Law pursuant to Rule 52(a)(1):

8 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. **Stipulated Conclusions of Law.**

   1. Defendant RMI was, at all times relevant to this action, an enterprise engaged in commerce within the meaning of FLSA.

   2. Defendant James Keyes was, at all times relevant to this action, President and owner of RMI and an employer within the meaning of FLSA.

B. **Conclusions of Law established through Trial.**

   1. Subject to certain exemptions, under the authority of the Department of Labor, FLSA requires employers to pay overtime compensation to employees for hours worked in excess of 40 per week. See 29 U.S.C. § 207(a)(1). Exemptions to FLSA's overtime rules are to be narrowly construed against employers, who bear the burden to prove an exemption applies. *Solis v. Washington*, 656 F.3d 1079, 1083 (9th Cir. 2011) (exemptions to be granted only to persons "plainly and unmistakably" falling within an exemption). Unless otherwise exempted, the Court concludes Defendants are subject to FLSA's requirements to compensate drivers working more than 40 hours a week with overtime pay.

   2. To meet the Motor Carrier Exemption under 29 U.S.C. § 213(b)(1), Defendants must first show they are subject to the jurisdiction of the Department of

9  - FINDINGS OF FACT AND CONCLUSIONS OF LAW

   Transportation. The MCA provides regulatory authority to the Department of Transportation to prescribe requirements for "qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation. 49 U.S.C. § 31502(b). A "motor private carrier" is defined in the statute as "a person, other than a motor carrier, transporting property by motor vehicle when-(A) the transportation is [in interstate commerce]; (B) the person is the owner, lessee, or bailee of the property being transported; and (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial purpose." 49 U.S.C. § 13102(15).

3. The Court concludes Defendants are a "motor private carrier" under § 31502(15). There is not any dispute that some of Defendants' drivers drove interstate routes during the relevant period. The parties dispute only whether Defendants transported "property" in interstate commerce within the meaning of the Motor Carrier Act when they transported: (1) the engines being tested, (2) the trailers carrying non-commercial loads, (3) the data-logging equipment, and (4) the intangible electronic data generated during test

10 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

drives. The Court concludes the evidence at trial established Defendants' drivers engaged in interstate commerce during the relevant period, at a minimum, when they transported crated engines in trailers between Oregon and Michigan for purposes of facilitating the testing program. In addition, Defendants' drivers also engaged in interstate commerce when they test-drove trucks with trailers across state lines for the purpose of gathering data for Defendants' testing program. The Court's conclusion is consistent with the U.S. Department of Transportation Federal Motor Carrier Safety Administration's interpretation of 49 C.F.R. §§ 390.3 and 390.5 (implementing regulations for the Motor Carrier Act) in which the FMCSA found that drivers who operate a commercial motor vehicle across state lines for the purposes of "road testing" the vehicle are subject to the Federal Motor Carrier Safety regulations by virtue of their involvement in interstate commerce. 62 Fed. Reg. 16370-01, at 16404 (April 4, 1997). In that regulatory guidance, the FMCSA also concluded an empty trailer constitutes "property" for purposes of transportation in interstate commerce under the Motor Carrier Act. *Id.* at 16406. The Court must give due deference to the FMCSA's interpretation of its

11 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

       regulations. *See Reich*, 33 F.3d at 1156, n.4 (deference due to Secretary of Transportation's interpretation in opinion letters of extent of regulatory jurisdiction); *Solis*, 656 F.3d at 1085 (gives controlling deference to Department of Labor's interpretation of its own regulations).

4. Although the statute does not define "property," courts have broadly defined property in this context to include the tools and equipment transported by drivers that are necessary to the performance of the service provided. *See Anderson v. Timber Prods. Inspection, Inc.*, 334 F. Supp. 2d 1258, 1261-62 (D. Or. September 13, 2004)(assessing numerous judicial opinions and concluding the plain meaning of the term "property" in this context includes, *inter alia*, the tools and equipment carried by the defendant). The Court, therefore, also concludes the data-loggers, which were owned by the various manufacturers for which Defendants were performing engine tests, are equipment that constitutes property for these purposes because the data loggers were necessary to the performance of Defendants' role in gathering data for their clients to use in the development of new engine platforms. In addition, under a plain meaning of the term property,

12 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

        the intangible electronic data generated by those machines during test drives also constitute "property" for purposes of the Court's assessment of the application of the definition of a "motor private carrier." On this record, the Court concludes such property was transported "to further a commercial purpose."

5.    A private motor carrier's employees are subject either to the jurisdiction of the Department of Labor (and the FLSA overtime requirements) or the Department of Transportation (and the requirements of the Federal Motor Carrier Safety Act), but not both. *Reich v. Am. Driver Serv., Inc.*, 33 F.3d 1153, 1155-56 (9th Cir. 1994)("Although many motor carriers engage in both interstate and intrastate commerce, a motor carrier cannot be subject to the jurisdiction of both the Secretary of Labor and the Secretary of Transportation."). "[A]ny employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49" is exempt from FLSA's overtime provisions contained in § 207. 29 U.S.C. § 213(b)(1)(known and referred to as the "Motor Carrier Exemption"). As this Court ruled

13 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

at summary judgment, the application of the Motor Carrier Exemption is determined on an employee-by-employee basis with Defendants bearing the burden to demonstrate the exemption's application to any or all of its employees.

6. Defendants maintain the safety audit by the Department of Transportation in November 2009 in which the DOT cited "some" of Defendants' intrastate-only drivers establishes that all of Defendants' drivers are exempt from FLSA because it demonstrates the DOT exercised jurisdiction over Defendants' drivers. That fact, however, does not control the Court's analysis as to whether, in fact, Defendants have carried their burden to show each of their drivers meets the Motor Carrier Exemption. *See Dole v. Circle "A" Constr., Inc.*, 738 F. Supp. 1313, 1317-18, 1320-21 (D. Id. June 1, 1990)(concluding that two safety audits by the DOT in which six drivers were found to be subject to the FMCSRs was insufficient to meet the defendant's burden as to the Motor Carrier Exemption). Here the parties' Stipulation reflects Defendants have roughly 130 drivers who drove only intrastate routes, and it is unclear on what basis the DOT reached its conclusion as to its jurisdiction over a small number of those

14 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

drivers. Accordingly, the Court concludes the DOT safety audit is insufficient to meet the Defendants' burden to prove the Motor Carrier Exemption applies as to those drivers.

7. Defendants did not meet their burden to prove their drivers who only drove intrastate routes "plainly and unmistakably" fit the Motor Carrier Exemption. *See Solis v. Washington,* 656 F.3d at 1083. A private motor carrier's driver meets the Motor Carrier Exemption if he either drives more than a *de minimus* amount in interstate commerce or if he reasonably expects to do so. *Reich,* 33 F.3d at 1156-57; *Anderson,* 334 F. Supp. 2d at 1261. Because the overwhelming evidence at trial proved that Defendants' policy was only to seek volunteers for trips made in interstate commerce, the Court concludes the possibility of being *required* to drive in interstate commerce was so remote that Defendants' drivers did not have a reasonable expectation that they would be required to do so. To the extent that drivers were required to drive on rare occasions to Ridgefield, Washington, the Court concludes such trips were not made in interstate commerce because they were not for the purpose of test-driving the vehicle and were made without a trailer.

15 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

        Even if such trips were considered to be made in interstate commerce, the roughly 40-mile round trip made a few times in a year constitutes far less than 1% of that driver's annual travel (40 miles is, for example, 2% of the low-average (400 miles a day for five days) drivers' total miles driven in a single week). Accordingly, the Court concludes such trips would constitute a *de minimus* amount of involvement in interstate commerce. Thus, in light of the Court's duty to construe any exemption from FLSA's overtime-pay requirements narrowly, the Court concludes Defendants have not carried their burden on this record to show that their drivers who only drove within Oregon (with an occasional trip to Ridgefield, Washington) meet the Motor Carrier Exception.

8. With respect to Defendants' drivers who, by volunteering, drove interstate routes, Defendants have not provided the Court with any available metric to determine whether each of those drivers' interstate routes were more than a *de minimus* involvement in interstate commerce. As noted, however, the parties filed a Stipulation (#95) as to Damages with respect to each of Defendants' drivers (which classifies Defendants' drivers based on intrastate and interstate

16 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

routes) during the relevant period based on the possible variations of verdicts the Court could issue. The Parties, however, did not address this issue specifically at trial or in their briefs, and the Court cannot discern from the Stipulation whether the parties have agreed that the Motor Carrier Exemption applies to each of the drivers in the "interstate drivers" class of the Stipulation. Thus, the Court cannot presently determine whether it must also assess whether Defendants met their burden to prove each of their drivers who drove interstate routes drove more than a *de minimus* amount in interstate commerce.

## CONCLUSION

For these reasons, the Court concludes as follows:

1.  Defendants are a "private motor carrier" under the Motor Carrier Act, 49 U.S.C. §§ 31502(b), 13102(14); and

2.  Defendants did not carry their burden to prove their drivers who drove exclusively intrastate routes in Oregon (with the exception of trips to Ridgefield, Washington) meet the Motor Carrier Act exemption to the Fair Labor Standards Act under 29 U.S.C. § 213(b)(1).

The Court **directs** the parties to file a joint statement **no**

17 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

**later than April 6, 2012,** to clarify the scope of the Stipulation (#95) as to Damages with respect to Defendants' interstate drivers in accordance with these Findings of Fact and Conclusions of Law and, to the extent possible, to set out the damages amount to which Plaintiff is entitled according to the Stipulation (#95) of the parties and in light of these Findings of Fact and Conclusions of Law. Accordingly, the Court reserves the authority to make additional findings of fact and conclusions of law and **defers** resolution of the remaining damages issues, including the applicability of liquidated damages under FLSA, pending the supplemental submission of the parties. After consideration of that submission, the Court will issue a verdict.

IT IS SO ORDERED.

DATED this 16th day of March, 2012.

_____
ANNA J. BROWN
United States District Judge